**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone: 602-374-5321
Fax: 480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar No. 024181

**ATTORNEY FOR: DEFENDANT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>        Plaintiff,<br><br>        v.<br><br>Albert Moses Coury, III,<br>        Defendant. | CR-2024-1442-PHX-MTL (JZB)<br><br>**MOTION *IN LIMINE* TO PRECLUDE PLEA AGREEMENTS AS EVIDENCE AT TRIAL** |

NOW COMES the Defendant, Albert Moses Coury, III, by Undersigned Counsel, to move this Court *in limine* to preclude the use of plea agreements signed by Mr. Coury's co-defendant and the defendants in *United States v. Plascenia, et al.* [1] Each of the plea agreements at issue are accompany this Motion as Exhibits. [2]

---

[1] *United States v. Plascencia, et al.*, Arizona District Court Number 23CR01489-KML.

[2] Exhibit 1 – Turner Plea Agreement; Exhibit 2 – Plascencia Plea Agreement; Exhibit 3 – Camarena Plea Agreement; Exhibit 4 – Santeros Plea Agreement; Exhibit 5 – Hughes Plea Agreement.

Undersigned Counsel certifies that she has met and conferred with the Government about this Motion.

As further grounds therefore, he submits the following:

**APPLICABLE LAW**

The Defense expects the Government to proffer the plea agreements of Mr. Coury's co-defendant, Natalie Turner, and the defendants in the related *Plascencia* matter. The plea agreements constitute clear hearsay and present Confrontation Clause issues, if the persons who signed the plea agreements do not testify.  Because of their particular sensitivity, they are addressed separately from Mr. Coury's other *in limine* motion regarding out-of-court statements.

These statements, which do not implicate Mr. Coury, also are not relevant to any of the Government's elements of proof.  Even if they could be shown to be tangentially relevant to Mr. Coury's criminal culpability, that relevance is outweighed by the highly prejudicial impact plea agreements could have on a jury's determination at his trial.

The Ninth Circuit's precedent of more than half a century establishes that "as a principle of general acceptance, the guilty plea of a codefendant may not be offered by the government and received over objection as substantive evidence

of the guilt of those at trial."[3]  The Ninth Circuit has noted that evidence of a

guilty plea can be admissible in limited circumstances, but writes:

> we are nonetheless sensitive to the possibility of prejudice, and therefore both trial and reviewing courts have responsibility to insure that evidence of the plea is being offered by the prosecutor and used by the jury only for a permissible purpose.  What may facially appear as a legitimate introduction of evidence of a plea becomes something else and on the level of prejudicial error when, for example, the prosecutor suggests in closing argument that the jury use the plea for a prohibited purpose, . . . when the plea has been used improperly to vouch for the codefendant as a witness, . . . when the use of the plea involves aggravated circumstances known to the trial court, . . .  or when the plea is clearly offered as substantive evidence of guilt.[4]

Here, the Defendant's objection addresses not only his codefendant's plea

agreement, but also those of the defendants in *United States v. Plascencia*.  The

*Plascencia* defendants allegedly acted as straw buyers at Mr. Coury's store.  None

of the factual bases in their plea agreements, however, appear to implicate Mr.

Coury.

---

[3]  *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981), quoting *Baker v. United States*, 393 F.2d 4, 614 (9th Cir. 1981), *cert.* denied 393 U.S. 836 (1981).

[4]  *Halbert*, 640 F2d at 1005 (internal cites omitted).

## I. Hearsay and the Confrontation Clause.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.[5] Hearsay is inadmissible.[6] The Ninth Circuit reviews a trial court's findings regarding evidentiary issues, such as hearsay, for an abuse of discretion.[7]

Even if out-of-court statements survive hearsay challenges, a Defendant still has a Sixth Amendment right to confront his accusers. The Confrontation Clause of the Sixth Amendment provides an absolute bar to the admission of testimonial out-of-court statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.[8]

*Crawford* holds that a declarant's "testimonial" out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies,[9] or (2) the defendant had a prior opportunity for cross-examination and the

---

[5] Fed. R. Evid. 801.

[6] Fed. R. Evid. 802.

[7] *United States v. Pelisamen*, 641 F.3d 399, 410 (9th Cir. 2011).

[8] *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

[9] *Id*. at 53-54.

declarant is unavailable,[10] or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted.[11]

The Confrontation Clause cannot be satisfied by a reliance on assurances of reliability. Rather, the Confrontation Clause "commands, not that the evidence be reliable, but that the reliability be assessed in a particular manner: by testing in the crucible of cross-examination."[12]

We cannot assume that the plea agreements are sufficiently reliable because they are signed under penalty of perjury.

The Ninth Circuit reviews a trial court's findings about whether or not proffered evidence violates the Confrontation Clause *de novo*.[13]

## II.     Relevance.

Federal Rule of Evidence 402 prohibits the admission of evidence that is not relevant. Evidence is relevant, if:

**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence;  and

**(b)** the fact is of consequence in determining the action.

---

[10]  *Id*. at 54.

[11]  *Id.* at 59 n. 9.

[12]  *Id*. at 61.

[13]  *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012).

Even if evidence is relevant, it must be precluded if, "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[14]  If there exists any alternative evidence with same or greater probative value, but with lesser threat of unfairly prejudicing defendant, as proffered evidence, court must discount probative value of originally proffered evidence and exclude it if its now-lesser probative value is substantially outweighed by unfair prejudice to defendant.

Evidentiary rulings by a trial court are reviewed for an abuse of discretion.[15]

## ARGUMENT

### I.     These Plea Agreements are Inadmissible under Fed. R. 402 and *Crawford v. Washington.*

The Defense expects the Government to proffer the plea agreements of Natalie Turner and the Plascencia as substantive evidence at trial.  The documents are, by definition, out-of-court statements.  If Government offers these statements to say to a jury, in essence, "This witness pled guilty to crimes

---

[14]  Fed. R. Evid. 403.

[15]  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

related to the allegations against Mr. Coury, so you should believe Mr. Coury is guilty, as well," that would be offering the plea agreements for the truth of the matter asserted, making these documents inadmissible hearsay.

Even if the Government can overcome the hearsay objection, it cannot overcome the *Crawford* Confrontation Clause issue these documents present. These plea agreements and the statements they contain are clearly made in the course of litigation.

These plea agreements cannot be treated as presumptively reliable. United States District Judge Jed Rakoff has noted:

> . . . [T]he prosecutordictated plea bargain system, by creating such inordinate pressures to enter into plea bargains, appears to have led a significant number of defendants to plead guilty to crimes they never actually committed. For example, of the approximately three hundred people that the Innocence Project and its affiliated lawyers have proven were wrongfully convicted of crimes of rape or murder that they did not in fact commit, at least thirty, or about 10 percent, pleaded guilty to those crimes. Presumably they did so because, even though they were innocent, they faced the likelihood of being convicted of capital offenses and sought to avoid the death penalty, even at the price of life imprisonment. But other publicized cases, arising with disturbing frequency, suggest that this selfprotective psychology operates in noncapital cases as well, and recent studies suggest that this is a widespread problem. For example, the National Registry of Exonerations (a joint project of Michigan Law School and Northwestern Law School) records that of 1,428 legally acknowledged exonerations that have occurred since 1989 involving the full range of felony charges, 151 (or, again, about 10 percent) involved false guilty pleas.[16]

---

[16] Jed. S. Rakoff, "Why Innocent People Plead Guilty," New York Review of Books, November 20, 2014, available at

It is not difficult to perceive why this should be so. After all, the typical person accused of a crime combines a troubled past with limited resources: he thus recognizes that, even if he is innocent, his chances of mounting an effective defense at trial may be modest at best. If his lawyer can obtain a plea bargain that will reduce his likely time in prison, he may find it "rational" to take the plea.[17]

The Sixth Amendment requires significantly more rigor than presuming that only guilty people plead guilty. As Justice Scalia wrote in *Crawford*, "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."[18]

## II.     The Agreements are Irrelevant to the Jury's Determination of Mr. Coury's Charges.

Mr. Turner's plea agreement does allege that Mr. Coury encouraged or procured the use of the "cheat sheet," often from home, which her plea agreement asserts violates 18 U.S.C. 924(a)(1)(A) and 2. The assertion in that plea agreement that her use of the "cheat sheet" and her working from home during

---

https://www.nacdl.org/getattachment/8e5437e4-79b2-4535-b26c-9fa266de7de8/why-innocent-people-plead-guilty-_-jrakoff_ny-review-of-books-2014.pdf (last visited January 16, 2026).

[17] *Id*.

[18] *Crawford*, 541 U.S. at 64.

the COVID pandemic, violated 18 U.S.C. 924(a)(1)(A), however, cannot be attributed to Mr. Coury.

None of the *Plascencia* plea agreements implicate Mr. Coury.  Mr. Plascencia's, Mr. Camarena's, and Ms. Santeros' plea agreements[19] mention purchasing guns at American Guns & Ammo, but make no mention of Mr. Coury.  Ms. Santeros' plea agreement.  Ms. Hughes' pertains only to a firearm purchase at Tombstone Tactical.[20]  These plea agreements, therefore, lack much, if any, probative value.  Given their potential prejudice, they should be precluded in their entirety.

Respectfully submitted this Sixteenth day of January, 2026.

s/Joy Bertrand
Joy Bertrand
Attorney for Defendant

---

[19]  Ex. 2 at 7-8;  Ex. 3 at 7-8;  and Ex. 4 at 7-8.

[20]  Ex. 5 at 6.

**CERTIFICATE OF SERVICE**

On January 16, 2026, I, Joy Bertrand, attorney for the Defendant, Albert Moses Coury, III, filed the foregoing with the Arizona District Court's electronic filing sy News regarding the violence of Mexican drug cartels has permeated recent media reports stem. Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon opposing counsel upon its submission to the Court.

Respectfully submitted this Sixteenth day of January, 2026.


s/Joy Bertrand
Joy Bertrand