**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone: 602-374-5321
Fax: 480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar No. 024181

**ATTORNEY FOR: DEFENDANT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　Plaintiff,<br><br>　　　v.<br><br>Albert Moses Coury, III,<br>　　　Defendant. | CR-2024-1442-PHX-MTL (JZB)<br><br>**OBJECTIONS TO PRESENTENCE REPORT** |

NOW COMES the Defendant, Albert Moses Coury, III, by Undersigned Counsel, to move to submit his objections to the presentence report. As further grounds therefore, he submits the following:

## INTRODUCTION

Mr. Coury's objections address legally unsupported guideline calculations and factual errors in the PSR. Mr. Coury's broader arguments regarding the appropriate sentence under 18 U.S.C. § 3553(a) will be set forth in a Sentencing Memorandum filed separately.

Mr. Coury's objections to the guidelines calculations are set forth in detail, *infra*. They are summarized as follows:

--  PSR is based on an incorrect calculation of the base offense level, under USSG 2K2.1(a)(8).

--  The PSR calculates a Total Offense Level of 24, producing an advisory range of 51 to 63 months.  Despite calculating an offense level above 16, the PSR fails to mention the third acceptance of responsibility point, which would reduce the adjusted offense level to 23;

--  The three enhancements driving that calculation are legally unsupported and factually unsustainable on this record;

--  The PSR omits the required 2 level reduction in the offense level for Mr. Coury's criminal history score of zero;  and

--  The PSR improperly calculates its recommended incarceration and fine.

Applying each of the above corrections to the guidelines calculations, Mr. Coury's adjusted offense level would be:

Base offense level:                    6

Criminal history score of zero:  -2

Acceptance of Responsibility:    -2

**Adjusted Offense Level         2**

That offense level, with zero criminal history points, would lead to a guidelines range of 0-6 months.

If the Court finds that Mr. Coury is responsible for between 25 and 99 firearms, then the adjusted offense level would be:

Base Offense Level:                    6

Enhancement for 25-99 guns:    +6

Criminal history score of zero:  -2

Acceptance of Responsibility:   -2

**Adjusted Offense Level          8**

An adjusted offense level of 8, with zero criminal history points, would lead to a guidelines range of 0-6 months.

### THE GOVERNMENT'S BURDEN OF PROOF

No matter what a Defendant's sentence ultimately is, the trial court must "still properly calculate the advisory guidelines-sentencing range for use in deciding the sentence to impose." *Gall v. United States*, 552 U.S. 38, 49-51 (2007).

Here, the PSR seeks a nearly five-year sentence for five misdemeanors. As will be discussed further, infra, the PSR bases that recommendation on an attempt to stack the counts, despite the fact that they were all acts in furtherance of the same conspiracy.

The PSR further seeks to apply guideline enhancements that shift what would be an advisory guideline sentence of 0-6 months to 51 months, constituting a sentence nearly **ten times** that of the base offense level. Likewise, the PSR seeks to apply a **fourteen-level increase** in the guidelines calculations, before the improper calculation of the base offense level is addressed.

The Supreme Court has held that in the FFL context, willful conduct requires proof that the defendant knew his conduct was unlawful. *Bryan v.*

*United States*, 524 U.S. 184, 196 (1998). Mr. Coury pled guilty to five counts of false entry by a licensee and conspiracy to make false entries, in violation of 18 U.S.C. §§ 922(m) and 371 — misdemeanors that do not include willfulness as a *mens rea*.

The government charged felonies under 18 U.S.C. §§ 922(a)(6) and 924(a)(2), which carry ten-year maximums and require proof of knowing conduct. Mr. Coury showed the cheat sheet to ATF regulatory inspectors and was never told to stop using it. He ran background checks on every purchaser. He submitted all required ATF forms. The record does not support a finding that he willfully participated in the Plascencia organization's unlawful conduct.

The international transfer enhancement under USSG §2K2.1(b)(6)(A) requires that the defendant transferred firearms "with knowledge" they would be transported out of the United States. The trafficking enhancement under USSG §2K2.1(b)(5) requires that the defendant "knew or had reason to believe" the conduct would result in firearms reaching unlawful users. The record does not support actual knowledge of either. The enhancement structure attributes through guideline findings the knowing, intentional conduct the felony charges required, and the government could not prove. The Ninth Circuit requires that facts supporting enhancements be proven by a preponderance of the evidence.

*United States v. Lucas*, 101 F4th 1158 (9th Cir. 2024).  The Court may not adopt enhancement findings that assume mental states the plea did not admit.

The ATF has acknowledged that the "willful" *mens rea* requires clarification, when applied to FFL enforcement actions.  Among 34 proposed rules, Rule 47P proposes to formally clarify the definition of "willfully" for FFL enforcement purposes — an acknowledgment that the standard was not applied clearly or consistently under the prior administration.  Proposed Rule 01P, which would modernize Form 4473 regulations to "reflect current technology and business practices," further confirms that the prior recordkeeping framework imposed requirements that were unclear in their application to real-world FFL operations.

FFLs operating under the prior framework faced real uncertainty about where the line fell between a good-faith paperwork mistake and a willful violation.  Mr. Coury pled to misdemeanors without a willfulness element, because that uncertainty cut in his favor.  The PSR, however, attempts to infer willfulness through guideline findings the record, which the record does not support, and the plea agreement did not admit. *See*, *e.g.*, *United States v. Bright*, 125 F.4th 97, 103 (4th Cir. 2025) (to apply three-level offense enhancement for the scope of criminal activity, "Appellant did not need to know everyone who

touched the drugs, but he did have to agree to jointly undertake the criminal activity.")

## FACTS ADMITTED IN MR. COURY'S PLEA AGREEMENT

Mr. Coury's plea agreement set forth limited facts to which he admitted. He admitted only to abetting false entries in ATF Forms 4473 regarding 1) where the forms were "completed" and 2) Natalie Turner signing a Form 4473 as the buyer/transferee of a firearm. (Plea Agreement at 8)

Regarding Ms. Turner's signing of a 4473 for another person, this allegation appears to pertain to Ms. Turner's admission in her plea agreement, which states, "NATALIE TURNER acknowledges that the signature of the transferee/buyer on the ATF Form 4473 dated July 15, 2020, did not match the signature of the same transferee/buyer on the ATF Form 4473 dated May 19, 2020." (*Id.*)

Mr. Coury's plea agreement makes no mention of straw purchases by the Plascencia family. Mr. Coury's plea agreement also makes no mention of transfer of weapons to Mexico or their intended use by a cartel.

## MR. COURY'S FACTUAL OBJECTIONS

A Defendant has a due process right to be sentenced with accurate factual information. The government bears the burden of proving criminal history by a preponderance of the evidence. *United States v. Ameline*, 409 F.3d 1073, 1085-86

(9th Cir. 2005) (*en banc*); *United States v. Carter*, 219 F.3d 863, 866 (9th Cir. 2000). *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), did not eliminate the government's obligation to establish by a preponderance that a particular conviction belongs to the defendant being sentenced. A name match alone cannot not satisfy that burden. Federal Rule of Criminal Procedure 32(i)(3)(B) requires this Court to rule on any disputed portion of the PSR.

The Yavapai County Justice Court record, Docket No. 95110337J, with a dismissed appeal dated February 12, 1996, has been attributed to Mr. Coury by name alone. There is no fingerprint match, no booking documentation, and no court record bearing Mr. Coury's identifying information. Mr. Coury has no criminal convictions of any kind. The Yavapai County record belongs to his cousin, who shares a similar name. The Government has not met its burden and cannot meet it on this record. Paragraph 46 should be stricken, and the corrected report should reflect that Mr. Coury has no prior criminal history of any kind.

## GUIDELINES CALCULATION OBJECTIONS

**I. PSR at 9, Para. 28 -- Base Offense Level.**

U.S.S.G. Section 2K2.1(a)(8) provides a base level of 6, "if the defendant is convicted under 18 U.S.C. § 922. . . (m). . ." Mr. Coury pled to one count of conspiracy to violate 18 U.S.C. 922(m) and four acts in furtherance of the

conspiracy, in violation of the same statute. (Plea Agreement at 1) The applicable base offense level, therefore, is 6.

II.     **PSR at 9, Para. 29 — Firearm Quantity**

Relevant conduct is limited to conduct within the scope of the defendant's own criminal agreement and reasonably foreseeable to him. USSG §1B1.3(a). In the FFL context, willful conduct requires actual knowledge that the conduct was unlawful and specific intent to violate the law. *Bryan v. United States*, 524 U.S. 184, 196 (1998).

The PSR attributes 95 firearms to Mr. Coury under USSG §2K2.1(b)(1)(C). The misdemeanor counts to which Mr. Coury pled account for – at the most – 34 guns. The record does not support, however, the willful *mens rea* for illegal purchases that the quantity enhancement requires.

**III.     PSR at 9, Paras. 30 and 31.**

Striking the offense level enhancement in Paragraph 30 reduces the offense level by four points. Striking the offense level enhancement in Paragraph 31 reduces the offense level by another four points.

The enhancement at Paragraph 30 cites USSG §2K2.1(b)(5) — a provision governing machinegun conversion devices that has no application here. Paragraph 31 cites USSG §2K2.1(b)(6)(A) as the basis for a further four-point

enhancement, which provides for only a two-point enhancement and is for convictions under a separate statute of conviction.

Both of these proposed enhancements appear to rest on a single mischaracterized statement that Mr. Coury made to explain why he did not suspect the purchases were problematic. No firearm from this case has been traced to Mexico – at least, not in the discovery supplied to the Defense in this case. The record does not support Mr. Coury's actual knowledge of illegal export, nor does it support his willful assistance in that illegal export.

*A.    The Guidelines Section the PSR Cites for Paragraph 30's Enhancement is Inapplicable to this Case.*

USSG §2K2.1(b)(5), cited by the PSR as the basis for a four-level trafficking enhancement, does not apply to this case. That provision addresses machine gun conversion devices exclusively. It has no application to the transfer of handguns, which are the only firearms at issue here. PSR ¶21. The PSR's citation of §2K2.1(b)(5) for a trafficking enhancement is error on its face.

*B.    The Offense Level Enhancement Cited in Paragraph 31 is Not Applicable to Mr. Coury's Offenses of Conviction and Mis-States the Allowed Enhancement.*

Paragraph 31 cites USSG 2K2.1(b)(6)(A) to support a four offense level increase. That section states, "If the defendant— was convicted under 18 U.S.C. § 933(a)(2) or (a)(3), increase by 2 levels." Mr. Coury's offenses of conviction are for violations of 18 U.S.C. 922(m).

The provision the draft PSR most likely intended to cite is USSG §2K2.1(b)(6)(B), which provides a two-level enhancement where the defendant transported, transferred, or disposed a firearm "knowing or having reason to believe" the recipient "intended to use or dispose of the firearms unlawfully." That guideline enhancement does not apply here for two independent reasons.

First, the application of this guideline is contrary to the Application Note to 2k2.1's relevant conduct limitation. One of 2k2.1's application notes states: The term "defendant," consistent with 1B1.3 (Relevant Conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused."

The relevant conduct section of the guidelines offers an example that is on point with the difference between Mr. Coury's culpability and the Plascencia defendants' culpability. Commentary C to 1B1.3 states:

> Defendant D pays Defendant E a small amount to forge an endorsement on an $800 stolen government check. Unknown to Defendant E, Defendant D then uses that check as a down payment in a scheme to fraudulently obtain $15,000 worth of merchandise. Defendant E is convicted of forging the $800 check and is accountable for the forgery of this check under subsection (a)(1)(A). Defendant E is not accountable for the $15,000 because the fraudulent scheme to obtain $15,000 was not within the scope of the jointly undertaken criminal activity (*i.e.*, the forgery of the $800 check).

The factual basis of Mr. Coury's plea establishes paperwork violations — where Forms 4473 were completed and Natalie Turner's signature on one 4473 in the "buyer" section. The plea agreement establishes no jointly undertaken criminal activity between Mr. Coury and the Plascencia organization.

The plea agreement does not mention straw purchases, the Plascencia conspiracy, or unlawful end use. *Bryan v. United States*, 524 U.S. 184, 196 (1998), requires actual knowledge that the conduct was unlawful. The record does not support that standard as to Mr. Coury's conduct in this case.

Second, the Application Note to USSG §2K2.1(b)(6) provides that the term "defendant," consistent with USSG §1B1.3, "limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." Mr. Coury pled guilty to conspiring with Natalie Turner. His plea does not encompass Plascencia, Camarena-Bedoy, Santeros, or Hughes.

The conduct of Plascencia's network — the straw purchases, the cartel transfers, the trafficking operation — is outside the scope of what Mr. Coury admitted, aided, abetted, counseled, commanded, induced, procured, or willfully caused. The enhancement cannot reach conduct Mr. Coury did not personally engage in and did not facilitate through the conspiracy to which he pled.

The enhancement should be stricken on all three grounds: the cited provision is inapplicable, the most likely intended provision requires actual knowledge the record does not support, and the Application Note limits accountability to Mr. Coury's own conduct and his conspiracy with Turner — not the conduct of Plascencia's trafficking network.

The PSR offers a one-statement basis for this enhancement: "The defendant told agents he knew they were purchasing firearms for a security company in Mexico." (PSR at Para. 31) No firearms recovered in Mexico appear anywhere in the PSR. No codefendant statement establishes that Mr. Coury knew where the firearms were going.

Businesses can legally import firearms into Mexico from the United States. The process requires export licenses from the U.S. Department of State or Commerce, compliance with the Arms Export Control Act, and authorization from Mexican authorities — but it is legal. A legitimate security company could lawfully obtain firearms through proper export channels. Plascencia told Mr. Coury his mother owned a security company. A large-volume purchase for that business would have been unremarkable if true. Nothing about that explanation put Mr. Coury on notice that the firearms would be illegally smuggled across the border. A stated legitimate business purpose points in the other direction. The leap from "customer mentioned a Mexican security business" to "defendant knew

firearms would be illegally smuggled to a cartel" is not a reasonable inference and certainly does not reach a preponderance of evidence burden of proof.

Mr. Coury ran background checks on every purchaser. He filed ATF multiple-sale reports. If any firearm sold at American Guns & Ammo had been recovered in Mexico and traced to this case, that evidence would appear in the PSR. It does not. The government ran a multi-year investigation, executed search warrants, and identified a cartel as the end recipient. No trace evidence appears anywhere in the record.

FFLs are not required to demand proof of export licenses from customers who mention foreign business connections. Mr. Coury was told a story. The story was false. Believing a false story is not a basis for a substantial increase in four guideline offense levels.

*C.* *The Plea Agreement Establishes the Outer Limit of the Government's Relevant Conduct Attribution.*

The factual basis of the plea agreement is narrow. Mr. Coury admitted that Turner or others typed buyer's section information into ATF Forms 4473 away from American Guns & Ammo; that Turner and others certified that both sections had been completed on the licensed premises when they had not; and that completed forms were emailed or texted back to the store for the customer's signature. Plea Agreement ¶10(a). The false entries were about where the forms

were completed and who completed them.  The plea agreement does not mention straw purchases, the Plascencia organization, Mexico, or a cartel.

**IV.    The PSR Erroneously Omits an Offense Level Reduction for a Criminal History Score of Zero.**

U.S.S.G. 4C1.1 provides for an additional 2-point reduction in the offense level for defendants with a criminal history score of zero.  Mr. Coury has no criminal history, so his criminal history score is zero.  To the extent that the Government will argue that this guideline does not apply for offenses involving unlawful possession of a firearm, Mr. Coury notes that his offense of conviction is not for being a prohibited possessor.  Likewise, the record contains no evidence that any of the defendants were prohibited possessors.

**V.    The Proposed Punishment is Improperly Calculated.**

*A.    The PSR Improperly Stacks the Five Misdemeanor Counts.*

18 U.S.C. 3584 states, in part, "Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."  Here, the five misdemeanor counts are interrelated.  They involve the same conduct, the same actors, and have no victims associated with them.  The PSR's recommendation for five, stacked sentences is improper.

*B.      The PSR Improperly Recommends a Fine.*

The scope of a presentence financial inquiry must be proportionate to the purposes it serves — informing the Court's fine determination under 18 U.S.C. § 3572 and USSG §5E1.2.  The inquiry is limited to information "necessary to inform" that determination.  *United States v. Barajas-Montiel*, 185 F.3d 947, 956 (9th Cir. 1999).

Mr. Coury pled to recordkeeping violations, not financial crimes.  The only relevant financial investigation requires information to allow the Court to determine whether Mr. Coury can pay a fine and, if so, the amount of the fine.

*C.      The Investment Account Established for the Care of Mr. Coury's Mother and Sister Should not be Considered in Calculating a Fine.*

Together with his bank statements, Raymond James account statements, mortgage and utility records, and 2025 tax documentation, the Court has a sufficient record for a misdemeanor fine determination.  Records of business entities, credit card histories, Robinhood account activity, and investment transaction explanations are not relevant to any sentencing factor in this case.

The PSR mentions an investment account that Mr. Coury's father designated for the care of his 73-year-old mother and his disabled adult sister Vanessa, who is nonverbal, has seizures, and requires full-time care.  18 U.S.C. § 3572(a)(6) requires the Court to consider "any financial obligations of the

defendant, including obligations to dependents." These funds should not be considered in terms of Mr. Coury's ability to pay a fine.

*D.    A Fine is not Appropriate, Given Mr. Coury's Financial Losses Related to this Case.*

ATF seized approximately $11,000 from Mr. Coury during the March 3, 2022 search warrant execution and filed forfeiture proceedings.  Mr. Coury did not contest the forfeiture.

Additionally, as a result of this investigation, Mr. Coury lost his business. He surrendered his federal firearms licenses permanently.  He now earns $942 per month on commission.  The PSR reflects a documented monthly deficit of $4,608.  His partner has no current income.

18 U.S.C. § 3572(a) requires the Court to consider the burden a fine will impose and any monetary penalty already imposed.  The forfeiture and the loss of the business are that penalty.

**CONCLUSION**

For the foregoing reasons, the Defendant asks this Court to sustain his objections to the Presentence Report, determine his adjusted offense level is 2, his criminal history score is zero, and sentence him to one year probation and no fine.

Respectfully submitted this Fifteenth day of May, 2026.

s/Joy Bertrand

Joy Bertrand
Attorney for Defendant

## CERTIFICATE OF SERVICE

On May 15, 2026, I, Joy Bertrand, attorney for the Defendant, Albert Moses Coury, III, filed the foregoing with the Arizona District Court's electronic filing system. Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon opposing counsel upon its submission to the Court.

Respectfully submitted this Fifteenth day of May, 2026.


s/Joy Bertrand
Joy Bertrand