TIMOTHY COURCHAINE
United States Attorney
District of Arizona

JACQUELINE SCHESNOL
Arizona State Bar No. 016742
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: jacqueline.schesnol@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Albert Moses Coury, III,<br>Defendant. | No. CR-24-1442-001-PHX-MTL (JZB)<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, through undersigned counsel, respectfully submits this sentencing recommendation. Defendant Albert Moses Coury, III ("Defendant" or "Coury") is scheduled to be sentenced on May 28, 2026, following his guilty plea to Counts 1 - 5 of the Information.

The United States has no legal objections or factual corrections to the Presentence Report ("PSR"). (ECF 107.) The United States agrees with the PSR calculations resulting in a Total Offense Level of 24 and Criminal History Category I. PSR at ¶¶ 38, 43, 89. This results in a Guidelines range of 51-63 months imprisonment. A recommendation of a

below-Guideline sentence of a 30-months custodial sentence[1] and 12 months of supervised release is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL HISTORY

After several years of unsuccessfully attempting to resolve this matter prior to an indictment,[2] a grand jury indicted Defendant Coury on August 27, 2024, for Conspiracy to Make False Statements in the Purchase of a Firearm, Aiding and Abetting False Statements in the Purchase of a Firearm, and Aiding and Abetting Material False Statements in the Purchase of a Firearm, for a total of 25 counts. (Doc. 1.) At that time, the United States filed a Notice of Related Case.[3] (Doc. 3.) Shortly before a final and firm trial date, on February 6, 2026, the parties reached a resolution, which involved Defendant Coury entering guilty pleas to five counts of an Information. (Doc. 103.) The plea included an admission to Count 1, Conspiracy to Make False Statements by a Licensee; and Counts 2-5, False Entry by a Licensee, Aid and Abet. Defendant Coury is scheduled to be sentenced on May 4, 2026.

## II. FACTS

### A. Background Explanation of FFLs and ATF Forms 4473

Business involved in dealing, manufacturing, or importing of firearms, or manufacturing or importing ammunition, must obtain a federal firearms license ("FFL") from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). ATF Forms

---

[1] A sentence of 30-months' incarceration is comprised of 12 months of incarceration for Count 1; 12 months of incarceration for Counts 2-4 (counts 2-4 to run concurrently to one another, but consecutive to Couts 1 and 5), which relate to straw purchasing; and 6 months of incarceration for Count 5, which relates to the undercover investigation, to run consecutively for a total of 30 months incarceration.

[2] The United States attempted to resolve this matter with Coury's previous counsel, prior to his retention of Ms. Bertrand.

[3] The related case is 23-cr-01489-PHX-KML, involving defendants Plascencia, Camarena-Bedoy, Hughes, and Santeros.

4473 are Firearms Transaction Records, which are required to be kept by FFLs, pursuant to Chapter 44, Title 18, United States Code. Some sections of the ATF Form 4473 are required to be completed by the buyer/purchaser of the firearm(s), including biographical information, address, and an avowal that they are the actual buyer of the firearm(s) ("buyer's sections"). The Form 4473 includes a warning that if the firearm is being acquired for another person, then the person completing that section is not the actual buyer. Some sections of the Form 4473 are required to be completed by the transferor/seller of the firearm(s), including a certification that the entire transaction record (the Form 4473) has been completed at the licensed business premises ("seller's sections"). The entire ATF Form 4473 must be completed by both the buyer/transferee and the seller/transferee at the licensed business premises.

**B. American Guns & Ammo**

From at least the beginning of February 2000 through the end of December 2021, Defendant Al Coury owned and operated American Guns & Ammo, an FFL that existed in Mesa, Arizona. Natalie Turner ("Turner") was Coury's long-time bookkeeper and office assistant. Turner's duties included reviewing ATF Forms 4473, mostly from her home, not at the "brick and mortar" FFL. During the relevant time period, American Guns & Ammo's practice was to have the purchaser of firearm(s) provide their identification on their first visit to American Guns & Ammo, from which a "template" or a "cheat sheet" was created. That "cheat sheet" was subsequently used by American Guns & Ammo to fill out the ATF Forms 4473 on the behalf of the customer prior to firearms purchases. Both the buyer and seller are required to sign the ATF Form 4473 at the FFL. In plain language, American Guns & Ammo was completing the buyer's section of the ATF Forms 4473 on behalf of the people purchasing firearms or the people picking up firearms on behalf of the true purchasers, even though the buyer is supposed to complete the buyer's section of the form.

When interviewed by ATF in early March 2022, Turner stated that she worked primarily from home over the previous year. From home, Turner ran background checks

and completed ATF Forms 4473. Turner did this by taking customer information from "cheat sheets" and filling out the ATF Form 4473. Turner also ran background checks for "future" firearm purchases. Additionally, Turner often signed the ATF Forms 4473 from her home. As a result, the ATF Forms 4473 would already be completed prior to a customer coming into American Guns & Ammo, and the customer simply had to sign the Form 4473 when they came into the FFL to pick up firearms. Defendant Coury knew what Turner was doing – in addition to being his bookkeeper, Turner was (and remains) Coury's significant other, living in the same home with Coury.

**C. Criminal Activities**

The facts giving rise to Coury's crime are detailed in the Indictment, Information, Plea Agreement, and the PSR. (Docs. 1, 99, 103, and 104.) The PSR details the extent of Coury's conduct. Over the course of several years, Coury engaged in dealing firearms at American Guns & Ammo (PSR ¶¶ 8-21.) Between April 2020 and December 2021, individuals purchased firearms from American Guns & Ammo on behalf of others, and Coury knowingly allowed that to occur.

**D. Plascencia, et al.**

From on or about February 3, 2020, through on or about October 3, 2020, the defendants in related case CR 23-01489-PHX-KML, Jose Antonio Santeros Placsencia, a.k.a. Plascencia ("Plascencia"), Hector Camarena-Bedoy ("Camarena-Bedoy"), Bethany Lynn Hughes a.k.a. Bethany Lynn Montoya Mayville ("Hughes"), and Lourdes Santeros ("Santeros"), agreed to make false and materially statements or representations to FFLs. Specifically, Plascencia recruited Camarena-Bedoy, Hughes, and Santeros to purchase firearms on his behalf. This involved the three recruits completing or signing numerous ATF Forms 4473 wherein they represented to FFLs that they were the true purchasers of firearms, when the firearms were in fact purchased on behalf of Plascencia, which was a materially false statement. Camarena-Bedoy, Hughes, and Santeros purchased many of the firearms at American Guns & Ammo. In keeping with American Guns & Ammo's practice,

and as evidenced in the investigation, Camarena-Bedoy, Hughes, and Santeros (and countless others) also completed "cheat sheets" the first time they purchased firearms at American Guns & Ammo. When Camarena-Bedoy, Hughes, and Santeros picked up firearms at American Guns & Ammo, that is all they did, pick up firearms. They did not complete ATF 4473s, they did not choose the firearms, and they often did not pay for the firearms. (PSR ¶¶ 9 and 13).

As a result of how Coury ran his FFL, American Guns & Ammo, Camerena-Bedoy, Hughes, and Santeros did not complete the buyer sections of the ATF Forms 4473 at that FFL. Camerena-Bedoy, Hughes, and Santeros admitted in their plea agreements that when they collected the firearms from American Guns & Ammo, at the most they would sign the ATF Form 4473 and depart with the firearms that defendant Plascencia had chosen and paid for. Some of the ATF Forms 4473 bearing the names of Camerena-Bedoy, Hughes, and Santeros, contained signatures that were not the true signatures of Camerena-Bedoy, Hughes, and Santeros. It appears that the signatures of Camerena-Bedoy and Hughes had each been forged on at least one ATF Form 4473. It appears the signature of Santeros had been forged on two ATF Forms 4473.

Defendant Coury was complicit in the making of material false statements, as he allowed Camarena-Bedoy, Hughes, and Santeros to pick up firearms that were actually for Plascencia. Coury knew the firearms were for Plascencia, as Coury dealt directly with Plascencia, who chose the firearms and paid for the firearms.

**E. UC purchases.**

The PSR generally describes Coury's conduct in relation to the undercover firearms purchases at his FFL. (PSR ¶¶ 10 and 13.) Starting in September 2021, ATF conducted an undercover operation in which two undercover agents ("UC" or "UCs"), a male and a female, made firearms purchases at American Guns & Ammo. The male UC negotiated and paid for firearms directly with Coury, and the female UC completed the ATF Form 4473 and picked up the firearms from Coury without the male UC present. Additionally, at least once, the ATF Form 4473 had a portion of it completed prior to the female UC

signing the form. The UC firearm purchases are charged in Count 5 of the Information, and occurred December 8-9, 2021.

**F. Interviews**

ATF agents interviewed Coury in March 2022. Coury confirmed he had read ATF Form 4473 in its entirety. Coury admitted American Guns & Ammo (his FFL) used a "template" or a "cheat sheet" to complete the 4473 after receiving the customer's identification and personal information necessary to complete Form 4473. In other words, Coury or an employee of American Guns & Ammo would get the customer's ID and then fill out a document very similar to the ATF Form 4473. Thereafter, every time that same customer would purchase a firearm, an American Guns & Ammo employee would fill in the Form 4473 for that customer using the information off the "cheat sheet" rather than having the customer complete the buyer's section of the form as required. Defendant Coury admitted that there may have been times he completed the buyer's section of ATF Form 4473 for a customer, and that there were times when firearms were transferred to customers and they forgot to sign the ATF Form 4473. When confronted with two ATF Forms 4473, both in Hughes' (formerly Mayville) name but with clearly two different signatures, Coury admitted the signatures were not the same and that it looked like someone forged the customer's name. Coury admitted it "didn't look good" for his FFL, and he could not give a legitimate explanation for the discrepancy. Coury further admitted it was possible that Jose Plascencia ordered firearms via phone or text communications, paid for the firearms, and then someone else picked up the firearms without completing the ATF Form 4473.

ATF agents interviewed Natalie Turner on March 3, 2022. Turner admitted she did accounting, bookkeeping, and office work for American Guns & Ammo. She said that she had read ATF Form 4473 in its entirety. Turner admitted she rarely interacted with customers, and she was not "out on the floor" selling guns or checking the IDs of customers. She said, "most guys don't want to buy guns from girls" and she was only "on the floor if the store was really busy." Turner admitted to working from home (which she shared with Defendant Coury), where she had access to a camera inside the FFL. While

working from home, Turner would look at the customer on camera at the FFL to see if the customer in the FFL matched the photo on their ID from the previously completed "cheat sheet". She further admitted she had run background checks from home. Turner admitted American Guns & Ammo employees used customer information that was already on file (the "cheat sheets") to complete the 4473s, and the transferees/buyers were not completing the forms themselves. She went on to say, that she had tried to call the customer to ensure the information on the "cheat sheet" she used to have not changed, but she only called them about 50% of the time. Turner stated there were times she signed the ATF Forms 4473 as the "transferor" because she was the person who had run the background check, even though she was not the person at the FFL physically delivering the firearms to the customer. Turner further admitted to signing a Form 4473 one time for a customer named Shawn, because he forgot to sign the form, but said she called him and got his permission to sign the form on his behalf. When confronted with two ATF Forms 4473 both in Hughes' (formerly Mayville) name but with clearly two different signatures, Turner admitted the signatures were not the same.

## III. UNITED STATES'S SENTENCING RECOMMENDATION

As calculated in the PSR, Defendant Coury has a Total Offense Level of 24, Criminal History Category I, and a Guidelines range of 51–63 months' imprisonment. Based on the analysis below, the United States recommends that Coury receive a custodial sentence of 30-months, which is below the Guideline range. The government recommends the Court structure the sentence as follows: a 12-month sentence for Count 1, Conspiracy; a 12-month sentence in Counts 2-4 to run concurrently to one another, but consecutive to Counts 1 and 5; and a 6-month sentence of incarceration for Count 5, to run consecutive to the sentences for Counts 1 and 2-4. Counts 2-4 derive from Coury's conduct related to the defendants in the related case. Count 5 derives from Coury's conduct related to the UC purchases. The United States will dismiss the Indictment at the time of sentencing, as to this defendant only.

**A. A Custodial Sentence in BOP is Appropriate under § 3553(a)**

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3553(a) factors to be considered by the Court. *Id*. (citations omitted). When a court determines that a sentence outside of the Guidelines range is warranted, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). As such, "a major departure should be supported by a more significant justification than a minor one." *Id*. at 992 (quoting *Gall*, 552 U.S. at 50).

In the present case, the United States submits that a 30-month prison sentence for Defendant Coury is a fair and just sentence that is sufficient but not greater than necessary to satisfy the objectives of sentencing set forth in § 3553(a).

**1. Nature and Circumstances of the Offense**

The Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(1). Over the course of several years, Coury helped facilitate the straw purchasing of firearms by allowing people to pick up firearms when those guns were actually for other people. The Court can also consider relevant conduct; Defendant Coury used "cheat sheets" so people either buying or picking up firearms could expedite their experience at his FFL. This negated the need for people to comply with the requirements of ATF Forms 4473 and allowed straw purchases of firearms to take place. The nature and circumstances of Defendant Coury offense call for a prison sentence. However, the government recognizes the age of this case, that Coury has been on pretrial supervision without incident, and he voluntarily surrendered his FFL, which all weigh in favor of a below-Guidelines sentence.

**2. Defendant's History and Characteristics**

Defendant Coury appears to have a close and healthy relationship with his family and girlfriend. (PSR ⁋⁋ 48 - 53.) He appears to have a high school degree. (PSR ⁋ 59.) It is relevant that Coury's criminal activity occurred several years ago. It is concerning that Coury failed to disclose or provide information (primarily financial information to the Probation Officer in the preparation of the PSR, see PSR ¶ 71.[4]

**3. Seriousness of the Offense**

Defendant Coury's sentence must "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Here, Coury sold at least 95 firearms. It does appear that Coury was primarily dealing firearms to those who could legally possess them, but without the true purchaser being subjected to a background check, Coury avoided ATF regulations. That, coupled with the inherent dangerous nature of firearms, risks the firearms falling into the wrong hands, and in this case some firearms were trafficked to Mexico (PSR ¶¶ 8-9, 22, and 31.)

---

[4] To date no credit card accounts or details of the E-Corp have been disclosed to the probation officer. On March 30, 2026, the defendant provided the probation officer with his credit report which revealed he has an exceptional payment history, and his only debt is an outstanding mortgage balance of $252,413, for which he pays $2,791 per month. The defendant objects to providing further supporting financial information. Public records from the Arizona Corporation Commission appear to indicate the defendant has three businesses actively operating in Arizona which include: Babas Management Co. LLC, which was formed on January 10, 2022, and for which the defendant is the listed statutory agent; Zibb-N-Fast LLC, which was formed March 20, 2009, and for which the defendant is the listed statutory agent; and Alberto Moses Coury III Management Company LLC, which was formed November 7, 2013, and for which the defendant is the listed statutory agent. While these businesses were not explicitly disclosed, the previously mentioned second bank account that the defendant provided records for was for Zibb-N-Fast Racing LLC, and had an ending balance of $13,889.28. Considering his significant cash flow, he appears to have an ability to pay a fine.

**4. The Need for Adequate Deterrence**

The sentence must also "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The motivation for Coury's crimes is unclear. What is known is that Coury engaged in a repeated pattern of conduct in which his business completed buyer's sections of Form 4473 and falsely certified that the entire form was completed at the business. That pattern, coupled with his lack of full cooperation with the Probation Officer (PSR at ⁋ 71), points to a need for specific deterrence in this case.

While these crimes occurred years ago but much of the delay was caused by Coury claiming to be interested in a pre-indictment plea that never materialized. The government does recognize that Coury has been on pretrial supervision without incident, and he voluntarily gave up the FFL. A prison sentence is appropriate to deter Defendant Coury from committing future crimes.

The need for deterrence also extends beyond preventing recidivism by Defendant Coury. General deterrence is about preventing criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant. *See United States v. Politano*, 522 F.3d 69, 74 (1st Cir. 2008); *United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006) (holding that courts must give "proper weight" to general deterrence as "one of the key purposes of sentencing"). Coury's sentence must be sufficient to deter him and other persons who may consider similar criminal conduct.

**5. Protecting the Public**

The Court should also consider the need "to protect the public from further crimes of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(2)(C). While Defendant Coury has no criminal history, the Court must be assured that the public is protected from Coury returning to criminal behavior. Therefore, the imposition of prison is necessary.

**6. Providing Needed Correctional Treatment**

The sentence imposed should provide Defendant with necessary and effective "educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D). It does not appear that Coury needs mental health or substance

abuse treatment; but, if he does, that can be addressed while he is in prison. Successful treatment could also help to protect the public from any future crimes.

**7. Avoid Unwarranted Sentencing Disparity**

The sentence should avoid an unwarranted disparity with similarly situated defendants. 18 U.S.C. § 3553(a)(6). Some of the defendants in the related case have been sentenced. Hughes received a sentence of probation. Plascencia was sentenced to 24 months' incarceration. Camarena-Bedoy was sentenced to three years of probation with 12 months of home confinement as a term of probation. Defendant Coury should be sentenced to a term of incarceration greater than either Plascencia or Camarena-Bedoy because Coury was the one allowing firearms go to others on Plascencia's behalf. Additionally, Coury did the same thing for the undercover officers. Further, the recovery of other cheat sheets during the search of Coury's business shows his business practices created openings for others to engage in the same type of straw purchasing behavior, although the government presently does not have evidence to show others did so at Coury's business. This dangerous business practice likewise shows Coury's culpability is greater than Plascencia's.

**B. A 12 Month Term of Supervised Release is Appropriate**

The United States recommends that Defendant Coury be placed on supervised release for 12 months. This term is warranted by the nature and circumstances of Defendant Coury's offenses. *See* 18 U.S.C. § 3583(c) (referencing 18 U.S.C. § 3553(a)(1), etc.). It is also necessary to protect the public from further crimes by Coury and to deter him from committing additional crimes in the future. *See id.* (referencing 18 U.S.C. § 3553(a)(2)(B) and (C)).

**C. FINE**

The United States agrees with the PSR that a fine should be imposed. The government recommends a fine of no less than $10,000. The Court is within its discretion to impose a fine up to $100,000. The fine is supported by Coury's ability to pay. (PSR ¶ 69.) Coury has not been forthright with the probation officer regarding his finances, which gives rise to concern that he has greater assets than he has disclosed. (PSR ¶ 71.) At bottom,

Coury made it easy for customers to obtain firearms without completing ATF Forms 4473, fostering an environment that enabled straw purchasing behavior, and he financially benefited from this business practice. He should pay a substantial fine as an additional deterrent.

## IV. CONCLUSION

The United States recommends that Defendant Coury receive a total sentence of 30-months' imprisonment, one-year supervised release, a $125 special assessment, and a fine of no less than $10,000.

Respectfully submitted this 18th day of May, 2026.

TIMOTHY COURCHAINE
United States Attorney

District of Arizona

*s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
JOSEPH E. KOEHLER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 18, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Joy Bertrand
Counsel for Defendant Coury

*s/Jacqueline Schesnol*
U.S. Attorney's Office