TIMOTHY COURCHAINE
United States Attorney
District of Arizona

JACQUELINE SCHESNOL
Arizona State Bar No. 016742
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: jacqueline.schesnol@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Albert Moses Coury, III,<br>Defendant. | No. CR-24-1442-001-PHX-MTL (JZB)<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT** |

The United States of America, through undersigned counsel, respectfully requests this Court deny Defendant Coury's objections to the Presentence Report ("PSR"). (Doc. 111.)

Defendant Coury's objections are entirely untimely and should be deemed waived altogether. Pursuant to Fed. R. Crim. Pro. 32(f)(1), objections are due within 14 days of the PSR. The Draft PSR was filed on March 4, 2026, and the Final PSR was filed on April 6, 2026. Defendant Coury failed to file his objections until May 15, 2026, weeks after objections were due, and less than 14 days prior to sentencing. However, even if Defendant Coury had timely filed his objections, all but the objection to the base offense level, should be denied.

## BACKGROUND

**Background On Presentence Investigations**[1]

Determining an appropriate sentence is one of the most critical decisions in the criminal justice process. By law, courts must impose sentences that are "sufficient but not greater than necessary" to accomplish the goals of sentencing: punishment, deterrence, community safety, and rehabilitation.

During the presentence investigation, the officer conducts an extensive interview with the defendant to discuss the individual's history and background, including childhood experiences, family factors, education, employment, criminal history, finances, physical and mental health, and alcohol or drug use. The officer also verifies the information through contact with family members, friends, employers, and community members.

During this stage, the officer also gathers documentation that can provide useful information for the court, such as court and school records, military service and employment records, and documents related to the defendant's finances and medical and employment history. The officer also conducts a thorough review of the criminal offense, including interviews with law enforcement officers and victims.

**Background on the Presentence Report**

The presentence report summarizes information gathered during the presentence investigation, including the offense, prior criminal history, social history, applicable advisory Federal Sentencing Guidelines, and victim impact statements.

In the report, the officer provides a sentencing recommendation, which includes an analysis and justification. The process entails a careful analysis of the nature and circumstances of the offense, the history and characteristics of the defendant, and the applicable statutes and advisory sentencing guidelines. The recommendation includes information about any departures from the guidelines that may be relevant to the case.

---

[1] https://www.uscourts.gov/about-federal-courts/probation-and-pretrial-services/presentence-investigations

Prior to sentencing, the report is reviewed for accuracy by the defendant, the defense counsel, and the prosecutor. The parties can recommend changes to the report. In response, the officer either makes the requested changes or explains why they were not made.

Typically, the officer attends the sentencing hearing and may be called on by the court to answer questions or provide additional information. Before imposing a sentence, the judge considers information from the presentence report, the defense counsel, and the prosecutor and statements from the defendant and sometimes from victims.

**LAW**

**18 U.S. Code § 3552 - Presentence reports**

**(a) Presentence Investigation and Report by Probation Officer.—**

A United States probation officer shall make a presentence investigation of a defendant that is required pursuant to the provisions of Rule 32(c) of the Federal Rules of Criminal Procedure, and shall, before the imposition of sentence, report the results of the investigation to the court.

**Rule 32(f) of the Federal Rules of Criminal Procedure**

(f) Objecting to the Report.

(1) *Time to Object.* Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report.

**18 U.S.C. § 3571 – Sentence of Fine**

**(a) In general**

A defendant who has been found guilty of an offense may be sentenced to pay a fine.

**18 U.S.C. § 3572 – Imposition of a sentence of fine**

**(a) Factors To Be Considered.—**

In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a) -

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the defendant of illegally obtained gains from the offense;

(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

(7) whether the defendant can pass on to consumers or other persons the expense of the fine; and

(8) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

**U.S.S.G. § 5E1.2(a)**

A court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.

**Relevant Conduct (Factors that Determine the Guideline Range)**

Section 1B1.3 defines relevant conduct as "the range of conduct that is relevant to determining the applicable offense level."[2] The guidelines include the concept of relevant conduct in §1B1.3 as a balance between two types of sentencing systems: "charge offense" sentencing, which looks solely at the elements of the statute of conviction, and "real

---

[2] U.S.S.G. §1B1.3, comment. (backg'd.); *see also Witte v. United States*, 515 U.S. 389, 403 (1995) (relevant conduct is a "sentencing enhancement regime [] envincing the judgement that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."

offense" sentencing, which considers the conduct that actually occurred in connection with an offense.[3] The relevant conduct analysis thus begins with the offense of conviction and then takes into account many real offense characteristics. Subsection (a)(1)(A) includes as relevant conduct "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."[4]

The standard of proof applicable to relevant conduct determinations under the advisory Guidelines is typically a preponderance of the evidence, but in some circumstances it may be clear and convincing evidence. *See United States v. Lonich*, 23 F.4th 881, 910–13 (9th Cir. 2022) (when enhancements are based on the conduct of conviction, the preponderance of evidence standard applies, but "if they are based on conduct for which the defendant was not convicted, the clear and convincing standard may apply" (citations omitted)); *United States v. Hymas*, 780 F.3d 1285, 1289–90 (9th Cir. 2015) (stating "extremely disproportionate" increases in sentencing ranges raise due process concerns that therefore require a higher burden of proof; whether an increase is "extremely disproportionate" depends on the "totality of the circumstances" rather than the absolute amount of the increase (citations omitted)); *United States v. Staten*, 466 F.3d 708, 717–18 (9th Cir. 2006) (a 15-level increase under §2D1.1 required clear and convincing proof).

The Court may, and should, consider relevant conduct when determining the appropriate sentence.

---

[3] U.S.S.G. Ch.1, Pt.A, Subpt.1(4)(a). For further discussion of the hybrid approach adopted by the Commission, and the principles undergirding the rules of relevant conduct found in §1B1.3, refer to Chapter One, Part A, Section 4(a) of the *Guidelines Manual*. *See generally Setser v. United States*, 566 U.S. 231, 247–50 (2012) (Breyer, J., dissenting) (discussing "real offense" sentencing and its "modification" by the guidelines).

[4] U.S.S.G. §1B1.3(a)(1)(A)

## FACTS SPECIFIC TO DEFENDANT COURY

The facts regarding Defendant Coury's criminal activity are set out in the original Indictment, subsequent Information, plea agreement, PSR, and the United States' Sentencing Memorandum. Those facts are incorporated herein.

## DEFENDANT COURY'S OBJECTIONS SHOULD BE DENIED

Defendant Coury objects to several PSR provisions, including: the Guideline calculation (based on the base offense level, the number of firearms, the specific offense characteristics, the lack of a third point for acceptance of responsibility, and the lack of zero-point offender reduction), consecutive sentences, and the fine.

### Guideline Calculation

#### *Base Offense Level*

Defendant Coury objects to the base offense level, as calculated in the PSR. Defendant Coury entered a plea agreement to five counts of an Information. The United States agrees with Coury that the appropriate Guideline to be used in calculating the Base Offense Level is § 2K2.1(a)(8).[5] Therefore, the correct Base Offense Level is 6.

#### *Number of Firearms*

Defendant Coury objects to the adjustment based on the number of firearms involved in the offense. The PSR determined that Coury is accountable for 95 firearms and applied a six-level increase, pursuant to § 2K2.1(b)(1)(C). The United States asserts this is an accurate determination, as described in paragraph 21 of the PSR. By Coury's own admission in his objection, he is responsible for 34 firearms. Even if Coury were only accountable for 34 firearms, the same six-level increase, pursuant to § 2K2.1(b)(1)(C), would be applicable. Therefore, this objection is moot and need not be resolved.

---

[5] The plea agreement erroneous cites 18 U.S.C. § 924(a)(3)(**A**) instead of (a)(3)(**B**). This typographical error may have been the basis for the incorrect determination of the Base Offense Level.

***Specific Offense Characteristics***

Defendant Coury objects to the specific offense characteristic adjustments in paragraphs 30 and 31 of the PSR. The PSR properly applied the enhancements pursuant to § 2K2.1(b)(5) and (b)(6)(A). As noted in paragraph 26 of the PSR, the 2021 Guidelines Manual was used. In the 2021 Guidelines Manual, § 2K2.1(b)(5) does not apply to machinegun conversion devices, as Coury believes, but in fact applies to the trafficking of firearms. The Court can consider relevant conduct, as outlined above. Here, the evidence set forth in paragraphs 8, 9, and 14 is sufficient to support the Guideline enhancements as recommended in paragraphs 30 and 31 of the PSR. Defendant Coury asserts that businesses can legally import firearms to Mexico, and he acknowledges that an export license is required. Coury had no such license.

As much as Defendant Coury wants to frame his crimes as mere paperwork errors, the relevant conduct demonstrates the full extent of Coury's involvement in transferring firearms to individuals who obtained them from him illegally. Therefore, the adjustments as recommended in paragraphs 30 and 31 should be applied.

***Acceptance of Responsibility***

Defendant Coury objects to the absence of a third level reduction for acceptance of responsibility. The plea agreement is silent as to any reduction for acceptance of responsibility. Defendant Coury did not assist authorities in the investigation or prosecution, and he did not enter a plea of guilty sufficiently in advance to enable the government to avoid preparation for trial. The government began trial preparation in earnest, including interviewing witnesses, filing and responding to motions, and submitting a witness list, proposed jury instructions, forms of verdict, etc., before Defendant Coury entered his guilty plea. Therefore, the United States has not moved for, nor will it move for, the third level for acceptance of responsibility.

***Zero-Point Offender***

Defendant Coury objects to the absence of a downward adjustment for zero-point offender status. Defendant Coury does not qualify for this reduction for two reasons. First,

§ 4C1.1 did not exist at the time of the 2021 Guidelines Manual. *See* U.S.S.G. § 1B1.11(b)(2) (2021) (setting forth the "one book" rule for applying the Sentencing Guidelines). Second, § 4C1.1 does not apply to cases in which the defendant transferred a firearm. *See* U.S.S.G. § 4C1.1(a)(7) (2025). The Court should overrule this objection.

**Consecutive Sentences**

The plea agreement is silent regarding sentencing. The Sentencing Guidelines are advisory. The Court can lawfully impose any sentence up to the statutory maximum of 12 months of incarceration on each count. Pursuant to U.S.S.G. § 5G1.2(d), if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. Therefore, this Court lawfully can and should run the sentences of separate counts for which Defendant Coury has been convicted consecutively to the extent necessary to produce a combined sentence equal to the total punishment the Court determines to be appropriate under the advisory Sentencing Guidelines.

**Fine**

The Court can impose a fine based on a variety of reasons. A fine need not be imposed only in cases of financial crimes, as Defendant Coury seems to imply. Regardless, Coury earned money transferring firearms and has the ability to pay, because the more firearms Coury sold, the more money he made. Coury has not shown he lacks the ability to pay a fine; therefore, the Court should impose an appropriate fine pursuant to U.S.S.G. § 5E1.2(a) (2021).

**Yavapai County Justice Court Record**

Defendant Coury asserts the Yavapai County record set forth in paragraph 46 of the PSR should not be attributed to him. Records[6] show the named defendant in that Yavapai

---

[6] The Yavapai County record has been provided to counsel for Defendant Coury.

County case is Alberty Moses Coury, III. One doubts that Defendant Coury's cousin has the same name, including the designation as the "III." Additionally, the address listed on the court record is the same as Defendant Coury's address of record in the year 1996. Finally, the reference to a dismissed appeal from 1996 has no impact on the sentencing guidelines or criminal history category. As such, this objection is moot.

**CONCLUSION**

Based on the record, Defendant Coury's Guidelines should be calculated as follows:

§ 2K2.1

| | | |
|---|---|---|
| Base Offense Level: | 6 | § 2K2.1(a)(8) |
| Adjustment: | +6 | § 2K2.1(b)(1)(C) (25-99 firearms) |
| Adjustment: | +4 | § 2K2.1(b)(5) |
| Adjustment: | +4 | § 2K2.1(b)(6)(A) |
| Adjustment: | -2 | §3E1.1(a)(Acceptance of Responsibility) |
| Total Offense Level: | 18 | |

Defendant Coury is in Criminal History Category I. This results in a Guideline range of 27-33 months incarceration. The United States reiterates its sentencing recommendation of 30 months incarceration, one-year supervised release, a $125 special assessment, and a fine of no less than $10,000.

Respectfully submitted this 21st day of May, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
JOSEPH E. KOEHLER
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that, on May 21, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Joy Bertrand
Counsel for Defendant Coury

*s/Jacqueline Schesnol*
U.S. Attorney's Office